HUSSEIN SAYYED MUSSALLAM (MUSTAFA) v. EEVA HANNELLE MUSS-
ALLAM

No. 8618DC240

(Filed 4 November 1986)

1. **Principal and Surety § 1— bond to require production of child**
    Evidence was sufficient to support the trial court's order that plaintiff's $25,000 secured civil bond was posted solely for the purpose of producing the child of the parties and not for further proceedings requiring the husband's presence.

2. **Principal and Surety § 11; Penalties § 1— bond to require production of child —forfeiture—proceeds to custodial parent**
    A bond to ensure that a minor child will be returned to the jurisdiction of the court, if forfeited, is not available to the county school fund, but instead should be distributed to the parent who had been awarded custody and who was damaged by the act of the non-custodial parent. N.C.G.S. § 50-13.2(c); Art. IX, § 7 of the N. C. Constitution.

APPEAL by the Guilford County Board of Education from *Daisy, Judge.* Order entered 25 October 1985 in District Court, GUILFORD County. Heard in the Court of Appeals 26 August 1986.

*John F. Comer for plaintiff appellee Hussein Sayyed Mussallam.*

*Manlin M. Chee, and Smith, Patterson, Follin, Curtis, James and Harkavy, by John R. Kernodle, Jr., for defendant appellee Eeva Hannelle Mussallam.*

*Hatfield & Hatfield, by John B. Hatfield, Jr., for defendant appellee Sureties, Doris H. Harshaw and Jo Wilkins.*

*Douglas, Ravenel, Hardy, Crihfield & Lung, by John W. Hardy, for appellant Guilford County Board of Education.*

BECTON, Judge.

This appeal concerns the distribution of the proceeds of a forfeited bond. The action began as a domestic dispute between a former husband and wife over the custody of their child. Appellant, Guilford County Board of Education, was not a party to the underlying civil litigation; it sought to intervene when the forfeiture of the secured bond was imminent. On 25 October 1985, Guilford County District Court Judge Daisy concluded that the husband had fled the jurisdiction of the court; that the husband's $25,000 secured civil bond was posted "solely for the purpose of producing the child of the parties and not for further proceedings requiring the [husband's] presence"; that the Guilford County Board of Education had no interest in the bond; and that the mother should get the proceeds of the forfeited bond. The Guilford County Board of Education appeals. We affirm.

I

On 27 January 1981, the husband, Hussein Sayyed Mussallam, a Kuwait citizen, obtained a divorce in Kuwait from Eeva Hannelle Mussallam, his Finnish wife. Approximately six months later, the husband filed an action in Finland, where his wife and minor child resided, seeking custody of the child. The wife was granted custody. In 1985, the wife brought the seven-year-old child to visit the husband, who was then living in Greensboro, North Carolina, and the husband hid the child and refused to return the child to the wife.

Seeking enforcement of the Finnish custody decree pursuant to N.C. Gen. Stat. Secs. 50A-15 and -23 (1984), the wife filed a Mo-

Mussallam v. Mussallam

tion in the Cause in Guilford County on 7 May 1985 asking for immediate custody of her daughter. After a show cause hearing, District Court Judge Williams found the husband in willful contempt of the Finnish custody decree and ordered that the husband be held in custody until he purged himself of contempt "by sending for the minor child, NORA KASSANDRA MUSSALLAM, and bringing her to this court. . . ."

The husband petitioned the superior court for a modification of the terms of the order, and on 17 May 1985 the superior court set a secured bond of $25,000 and ordered the husband to appear in District Court with the minor child on 31 May 1985. On Saturday, 25 May 1985, the husband posted the $25,000 bond through two sureties and was released from custody.

When the husband failed to appear in district court with the minor child on 31 May 1985, the district court judge ordered that the $25,000 secured bond be immediately forfeited and the husband taken back into custody and held without bond. The husband has not been located since.

On 11 September 1985, the sureties on the bonds filed motions to release the bonds or to assess civil damages. The attorneys for the Guilford County Board of Education filed an answer to the motions of the sureties seeking forfeiture of the entire amount of the bonds to the Guilford County School Fund.

II

The Guilford County Board of Education contends that District Court Judge Daisy erred (1) in finding as a fact that the Superior Court's order was solely for the purpose of producing the child of the parties and not for further proceedings requiring the presence of the husband as an appearance bond; and (2) in concluding that the bond undertaken is not an appearance bond but is a compliance bond and that the Guilford County Board of Education is not entitled to the proceeds of any forfeiture. We address the contentions *seriatim*.

[1]   A. Judge Daisy's finding that Judge Beatty's order was solely for the purpose of producing the minor child was supported by evidence.

Because the husband had apparently sent the minor child to Kuwait, District Court Judge Williams found the husband in "will-

ful contempt of the Finnish custody decree" and ordered him placed in jail until he brought the child before the court. Judge Williams expressed his concern that the husband might flee the country. However, because Judge Williams made no findings regarding whether the husband had the means or the ability to bring the child before the court while the husband remained in jail, the husband, through counsel, sought and obtained a habeas corpus hearing in superior court.

Superior Court Judge James Beatty ordered that "the [husband] return to district domestic court on May [31], 1985 and at that time make the child, Nora Kassandra Mussallam (Mustafa) available to the court, in compliance with the order of Judge Williams or be returned to custody; . . . [and that the father] remain within the jurisdiction and not remove himself from Guilford County until the said child is returned; . . . .

The terms of Judge Beatty's order and, indeed, the record as a whole reflect the common goal of the court and of the mother — to ensure that the child be returned to the custody of the mother. As we read Judge Beatty's order, once the child was brought to court, the husband was free to do whatever he wanted to do, including leave the jurisdiction.

When District Court Judge Daisy considered the motions of the sureties and of the Guilford County School Board, he, based on the motions and the entire court record, found as follows:

> Although Judge Beatty's order required the [husband's] appearance in district court, it was solely for the purpose of producing the child of the parties and not for further proceedings requiring the [husband's] presence.

This finding was based on the court's review of the entire file, and we find that it is supported by the record.

[2]   B. The Guilford County Board of Education is not entitled to the proceeds from the bond forfeiture in this case.

Article IX, Section 7 of the Constitution of North Carolina provides that only "the *clear proceeds* of all penalties and forfeitures and of all fines collected in the several counties *for any breach of the penal laws of the State*, shall belong to and remain in the several counties, and shall be faithfully appropriated

and used exclusively for maintaining free public schools." (Emphasis added.) This constitutional mandate has been codified in N.C. Gen. Stat. Sec. 115C-452 (1983) and is the basis upon which the Guilford County Board of Education contends it is entitled to the forfeited bonds in this case. The constitutional mandate makes clear that a fine imposed in a criminal case must be paid to the county school fund after the costs of collection are taken out. *Shore v. Edmisten*, 290 N.C. 628, 227 S.E. 2d 553 (1976). But the case *sub judice* is not a criminal case. Simply put, the $25,000 secured by the sureties in this matter is not "clear proceeds" flowing into state coffers because of "any breach of the penal law of the State." As stated by the wife in her brief, in this case, "a civil bond was set for the purpose of redressing wrongs committed by one private individual toward another private individual, not for criminal acts against society as a whole in violation of the 'penal laws'." The entire proceedings in this case — the underlying civil domestic action as well as the civil contempt proceedings — were undisputedly civil in nature. "The purpose of civil contempt is not to punish; rather, its purpose is to use the court's power to impose fines or imprisonment as a method of coercing the defendant to comply with an order of the court." *Jolly v. Wright*, 300 N.C. 83, 92, 265 S.E. 2d 135, 142 (1980).

Further, Judge Daisy's finding that the bond posted was a compliance bond distinguishes this case from *In re Wiggins*, 171 N.C. 372, 88 S.E. 508 (1916) in which a warrant was issued for Wiggins' arrest and Wiggins posted a $300.00 "bond for his appearance." *Id.* at 374, 88 S.E. at 509.

Moreover, N.C. Gen. Stat. Sec. 50-13.2(c) (1984) specifically authorizes the setting of a bond to ensure that a minor child will be returned to the jurisdiction of the court. In our view, such a bond, if forfeited, would not be available to the county school fund, but rather would be distributed to the parent who had been awarded custody and who was damaged by the act of the non-custodial parent. Indeed, the proceedings in this case can be compared to other civil cases in which parties are required to post bond and where, if the party fails to prevail, the bond is forfeited to the opposing party, not to the school fund. By way of example, it is a common practice in this State for district courts to set secured bonds in civil child support actions when the supporting parent has failed to appear in court to show cause why he or she

should not be held in contempt, and for the secured bond, if posted, to be forfeited and the proceeds applied to any outstanding arrearages owed by the supporting parent. *See Elmwood v. Elmwood*, 295 N.C. 168, 244 S.E. 2d 668 (1978); *Wolfe v. Wolfe*, 64 N.C. App. 249, 307 S.E. 2d 400 (1983).

The district court judge properly concluded that the bond in this case was a compliance bond, not an appearance bond. But even if the bond were an appearance bond, we believe it was designed to ensure the wife a measure of recovery in the event the husband failed to comply with the court's order. The result is particularly compelling in this case because, as the wife points out in her brief:

> A private citizen from another land has suffered the horrendous loss of her child. She faces the prospect of never seeing her daughter again; of new trials in an unfriendly, foreign religious court; and of untold costs if she should try to locate and regain custody of her daughter. For the public schools of Guilford County to benefit from the proceeds of this civil bond forfeiture would be a manifest injustice not contemplated or permitted under the laws of the State of North Carolina.

Based on the foregoing, the judgment of the Guilford County District Court is

Affirmed.

Judges PHILLIPS and MARTIN concur.